[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11419

_____

D.C. No. 6:14-cv-00106-ACC-KRS

JOSEPH COONEY,

Plaintiff-Appellant,

versus

BARRY SCHOOL OF LAW,
a.k.a. Dwayne O. Andreas School of Law,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 9, 2018)

Before TJOFLAT, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Cooney appeals from the district court's grant of summary judgment in favor of Defendant, Barry Law School. The district court rejected all of plaintiff's claims under both the Americans with Disabilities Act (ADA) and the Rehabilitation Act (Rehab Act) for two alternative reasons: first, that plaintiff was not disabled; and second, even assuming plaintiff was disabled, he failed to adduce evidence creating issues of fact that Barry's actions violated the ADA or Rehab Act.

## I. THE DISTRICT COURT'S HOLDING THAT PLAINTIFF WAS NOT DISABLED WAS ERRONEOUS

As an initial matter, we agree with plaintiff that the district court erred in its holding that plaintiff was not disabled. The district court's primary error was its application of the law prior to the 2008 Amendments which modified the definition of the term "disability." In particular, the district court – in holding that plaintiff was not disabled – relied particularly on the fact that plaintiff's eye problem could be mitigated by corrective surgery. See D.C. Doc. 143 at 9 (holding that "mitigating measures must be taken into account in judging whether an individual possess a disability" and holding that the "death knell to plaintiff's claim of having a disability is the extent that his impairment can be corrected.") The 2008 Amendments expressly changed the law with respect to mitigation. See 42 U.S.C. §12102(4)(E)(i) ("The determination of whether an impairment substantially limits

2

a major life activity shall be made without regard to the ameliorative effects of mitigating measures."). The district court's failure to apply the 2008 Amendments may also have led to other errors in its holding that plaintiff was not disabled. For example, see 42 U.S.C. §12102(4)(C) ("An impairment that limits one major life activity need not limit other major life activities in order to be considered a disability."). In any event, in our resolution of this case, we assume arguendo that plaintiff did satisfy the definition of disabled; we proceed to address plaintiff's argument that the district court's alternative holdings were erroneous.

## II. THE DISTRICT COURT'S ALTERNATIVE HOLDINGS

The plaintiff mounts two primary arguments supporting his position that the district court also erred in its alternative holdings: first, plaintiff argues that the district court erred in rejecting his claim that Barry violated the ADA when Professor Megale refused to grant his request for additional time to file his appellate brief in the legal writing class; and second, plaintiff argues that the district court erred when it rejected plaintiff's claim of violation when Barry refused to grant his request for extended probation and dismissed him from the school.

We note that we have had the benefit of oral argument and have carefully reviewed the record and the briefs of the parties (including not only plaintiff's pro se brief but also the brief of his appointed attorney). We also note that we issue

3

this unpublished opinion only for the benefit of the parties, and because they are familiar with the facts, we set out only those facts necessary for an understanding of our resolution of this case.

A.  Plaintiff's argument that Barry violated the ADA when Professor Megale refused to grant his request for an accommodation for an extension of time to turn in his appellate brief in the legal writing course

The schedule in the legal writing course for the briefs and oral argument was clear.  The briefs of all class members were to be turned in on Monday, April 4, 2011, no later than 7:00 p.m.  The instructions made clear that the deadline was of utmost importance, and severe penalties would be imposed for failure to meet the deadline (10% reduction in the grade if 1-15 minutes late; 20% reduction if 16 minutes to 24 hours late; and a grade of zero for the assignment if 24 hours or more late).  Oral arguments were scheduled for Friday April 8, Saturday April 9, and Sunday April 10.

Plaintiff's eye problem occurred on March 12, 2011. Pl's. Dep. 139. Thereafter, plaintiff contacted an appropriate office and made several requests to accommodate for his eye disability, including additional time for taking examinations, additional time to turn in his brief in his legal writing class, and use of sunglasses during the oral argument for that class.  His requested accommodations were granted, except that those relating to the legal writing class with respect to which plaintiff was told that he must ask his legal writing professor,

4

Professor Megale. Later, when the brief was "almost due" (i.e., shortly before April 4, 2011, at 7:00 p.m.), plaintiff first approached Professor Megale to ask her for additional time to file his brief. Under the particular circumstances of this case and for the following reasons, we cannot conclude that the district court erred in its alternative holding that the Act was not violated when Professor Megale declined to grant plaintiff's request for additional time to turn in his brief.

Plaintiff's request for additional time was very belated. He approached Professor Megale, at the earliest, [1] shortly before the deadline (i.e., shortly before April 4, 2011), notwithstanding the fact that his eye problem occurred on March 12. Professor Megale's immediate response was that she "couldn't do that" … [because] there was a certain date [for the oral argument] and she couldn't delay it." Pl's. Dep. 36. Obviously the time before the scheduled arguments was extremely short – from April 4 at 7:00 p.m. there were less than four full days before the first oral argument on April 8 and six days before the last argument on April 10. And of course the student whom plaintiff would face in the oral

---

[1]     Plaintiff's testimony in deposition is inconsistent as to the precise timing of this first approach to Professor Megale to ask for additional time for filing his brief. At several points in the deposition, he expressly states that he first approached the Professor after he emailed her seeking an accommodation for permission to wear sunglasses at oral argument, and that his approach was an in person, oral request. That email was dated April 8, 2011, which of course would mean that there was virtually no extended briefing deadline that would not substantially alter the oral argument schedule. In the summary judgment posture of this case, we give plaintiff the benefit of the doubt and deem that his request was first made when the brief was "almost due" – i.e., shortly before the Monday April 4, 2011, deadline.

argument would have to have at least a few days beforehand to prepare for the oral argument, thus further reducing any remotely feasible opportunity for extending plaintiff's briefing deadline.  Although plaintiff acknowledges that Professor Megale's immediate response was that she could not grant the delay because of the fixed oral argument date, plaintiff did not suggest to the professor that only a day or two would have been helpful.  Moreover, plaintiff later testified in deposition: "I was thinking at least a week [extension], maybe longer, maybe ten days" would've been necessary. Pl's. Dep. 66.

Under the particular circumstances here, we conclude that no reasonable jury could find that plaintiff's belated request for additional time to turn in his brief was a reasonable request for accommodation that would not cause a substantial alteration of the legal writing program. Given the short time period between the briefs' due date and oral arguments, plaintiff's belated request, and the fact that plaintiff did not inform Professor Megale that a one day extension would be sufficient, an accommodation would have placed an undue burden on the program. Accordingly, with respect to this first argument of plaintiff, we cannot conclude that the district court's alternate holding rejecting the argument was erroneous.

B.  Plaintiff's argument that Barry violated the Acts by refusing to grant plaintiff extended probation and consequently dismissing him from the school

The district court, in its alternative holding, held that plaintiff was not "otherwise qualified," and thus there was no violation even if plaintiff was disabled.  Plaintiff's appointed attorney acknowledges that the "otherwise qualified" issue is dependent upon our resolution of the foregoing issue – i.e. extension of time for the appellate brief.  We agree that the two issues are intertwined.

It is undisputed that Barry's rules provide that a student who fails to maintain a 2.0 grade point average (GPA) should be academically dismissed from the school.  The rule provides that a student who has 1.750 to 1.990 GPA receives only "restricted advancement" to the next semester – i.e., mandatory probation.  Although plaintiff had received a 2.0 GPA in his first semester (Fall 2010), he received a 1.809 for the Spring 2011 semester (a cumulative GPA of 1.8789).  Because this was less than a 2.0 GPA, plaintiff was granted restricted advancement to (i.e., placed on mandatory probation for) the next semester (Fall 2011).  However, notwithstanding that plaintiff was granted every accommodation he requested for that Fall 2011 semester, he nevertheless achieved only a 1.883 (cumulative GPA of 1.879).  The Barry rules mandated academic dismissal, unless the Academic Standards Committee granted extended probation.  The Student Handbook provided that a student petitioning for such extended probation must

7

overcome a presumption of dismissal by clear and convincing evidence that, inter alia, the student had achieved substantial improvement in scholastic achievement during the period of mandatory probation, and also that there is a likelihood that an additional semester of probation will result in a cumulative GPA of 2.0 or greater.

Plaintiff petitioned for extended probation, but the Academic Standards Committee denied same, and consequently plaintiff was dismissed from the school for failure to satisfy the 2.0 GPA requirement. In the district court and on appeal, plaintiff challenges the Committee's decision to deny extended probation and his consequent dismissal from the school. In its alternative holding, the district court held that plaintiff was not "otherwise qualified" and therefore rejected plaintiff's challenge. The plaintiff argues on appeal that, if Barry violated the law when Professor Megale refused to grant plaintiff's request for additional time for the brief, then the Committee's reliance on plaintiff's poor grade for that Spring 2011 semester was also a violation, thus tainting the Committee's decision. The plaintiff also argues that there is evidence that the Committee denied extended probation in part because of his disability – i.e., his eye problem.

It is true that the initial draft of the Committee's reasons for denial suggested that the Committee believed that plaintiff, suffering as he did with the eye problem, would not be likely to achieve a 2.0 GPA if given the opportunity of another semester. However, because we have already held that there was no violation

when Professor Megale declined to allow an extended briefing deadline, the predicate underlying plaintiff's argument falls away. The GPA figures relied upon by the Committee were not tainted. And the initial draft of the Committee's rationale is a mere statement of the obvious fact that plaintiff's GPA does in fact indicate that there is little likelihood that an additional semester of probation would result in plaintiff's achieving a cumulative GPA of 2.0 or greater. In other words, the Committee's initial draft is a mere recognition that plaintiff was not "otherwise qualified." Indeed, plaintiff's deposition testimony reveals that plaintiff purposely avoided telling the Committee that he had requested an accommodation which was not granted, but which he thought should have been granted. Thus, operating under the perception that plaintiff had been afforded all the accommodations he requested, the Committee's belief that he could not achieve the required 2.0 GPA with or without accommodations constitutes merely a belief that plaintiff was not "otherwise qualified"; by itself, it is not evidence of discrimination. We cannot conclude that the district court erred in its alternative holding rejecting plaintiff's argument challenging the decision to deny extended probation and the consequent dismissal from the school.

9

For the foregoing reasons,[2] the judgment of the district court is

AFFIRMED.

---

[2]    We have carefully considered plaintiff's pro se brief on appeal, in addition to the brief filed by his appointed attorney.  Although it raises a few issues not raised by plaintiff's appointed attorney, and although we have carefully considered them, we cannot conclude that they indicate reversal of the district court decision or that they warrant further discussion.